# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA COLUMBIA DIVISION

AARON TYLER and AMELIA TYLER,

individually and on behalf of their minor child,

JAMES "WILLIAM" JOHNSON (J.W.J.),

*Plaintiffs*,

v.

RICHLAND COUNTY SCHOOL DISTRICT ONE,

*Defendant*.

**Case No.:** 3:26-2338-MGL-MHC

**Nature of Action:** IDEA Appeal (20 U.S.C. § 1415(i)(2)); Section 504 and ADA Retaliation

# PLAINTIFFS' PRINCIPAL BRIEF IN SUPPORT OF REVERSAL OF THE STATE REVIEW OFFICER'S DECISION

## I. PRELIMINARY STATEMENT: THE CYNICAL EVASION OF FEDERAL LAW

This case presents a chilling blueprint for evasion if allowed to stand: A local school district successfully utilized a manufactured "residency dispute" as a jurisdictional kill-switch to extinguish a disabled student's fundamental civil rights under the Individuals with Disabilities Education Act (IDEA).

The administrative record reveals a calculated campaign by Richland County School District One ("the District"). On October 7, 2025, the District issued a Prior Written Notice (PWN) expressly admitting that J.W.J. was owed compensatory education services in Reading and Writing to remedy historic educational failures (**Exhibit G**). Plaintiffs executed signed consent for these services on October 10, 2025 (**Exhibit H**). Rather than implementing the specialized instruction it had just confessed was legally

required, the District abruptly and punitively disenrolled J.W.J. on November 4, 2025—less than one month later (**Exhibit J**).

To compound this violation and crush parental advocacy, the District levied an extortionate $46,096.12 total "tuition bill" against the family (**Exhibit K**), deliberately assessing J.W.J. a $25,922.76 penalty—a glaring "disability tax" that was 2.5 times the tuition of his neurotypical siblings, who were also punitively disenrolled to destabilize the family's support system (**Exhibit K**). When the family engaged in protected advocacy, the District weaponized the state's child welfare apparatus, launching a baseless, bad-faith Department of Social Services (DSS) investigation scheduled strategically around critical administrative deadlines to exert maximum emotional and legal duress (**Exhibit N**).

The Local Hearing Officer (LHO) and the State Review Officer (SRO) endorsed this bad-faith maneuvering by rubber-stamping a legally absurd "race to the courthouse" theory of the IDEA's "Stay-Put" provision, and by ignoring controlling South Carolina Supreme Court precedent regarding statutory enrollment entitlements (*Storm M.H.*). Plaintiffs bring this action to reverse the SRO's March 11, 2026 decision (**Exhibit R**), seeking immediate reinstatement under Stay-Put, the full delivery of agreed-upon compensatory education, and pecuniary damages for intentional discrimination, mitigation costs, and lost educational opportunities under Section 504 and the ADA.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331. In standard IDEA appeals, a federal district court applies a "modified de novo" standard, giving due weight to state administrative findings. However, federal precedent establishes that zero administrative deference is owed when the state administrative apparatus demonstrates a total abdication of its core review duties.

As detailed below, the SRO's March 11, 2026 appellate decision (**Exhibit R**) purported to "affirm" a dismissal *with prejudice* that never existed, completely misrepresenting the LHO's actual order dated February 2, 2026, which dismissed the withdrawal claims *without prejudice* (**Exhibit Q**). Because the two tiers of the state administrative apparatus irreconcilably contradict each other on the core legal disposition of the complaint, and because the lower officers completely misapplied the Summary Judgment standard by weighing facts instead of identifying disputes, this Court must act as the primary fact-finder and review the entire record strictly *de novo*.

## III. CORE FACTUAL TIMELINE

The administrative record demonstrates an undeniable, premeditated sequence of events where the District weaponized administrative residency procedures and state investigative agencies to escape its special education liabilities:

- **Spring 2024:** The District failed to timely evaluate J.W.J. despite proactive notice of his profound academic struggles and suspected disability, constituting a fundamental Child Find failure (**Exhibit A**).

- **August 6th & 7th, 2025:** J.W.J.'s parents successfully re-registered him and his siblings in the District's enrollment portal for the 2025–2026 school year (**Exhibit B**).

- **August 8, 2025:** Within 24 hours of portal submission and before classes began, Rosewood staff launched unannounced, pretextual surveillance at the family's property. Internal records confirm this targeted operation solely scrutinized the disabled student, J.W.J., to fabricate a residency case while excluding his siblings. (Exhibit C , Exhibit D)

- **September 16, 2025:** Assistant Principal Julie Stensland initiated formal communications regarding J.W.J.'s attendance (**Exhibit E**), using it to accelerate the pre-planned, bad-faith residency investigation rather than deploying academic or behavioral interventions.

- Septembert 29th: **District staff was aware that J**.W.J. met the criteria to attend the LEA by right of the families' property ownership under sc code 59-63-320 subsection C, even though he did not reside in the district. Nevertheless disenrollment proceedings were initiated after the school social worker made an unannounced visit to another property the family owned extra district and found J.W.J. parents operating their small business from that location.

- **October 7, 2025:** The District issued a formal Prior Written Notice (PWN) and IEP explicitly admitting that J.W.J. had suffered a denial of a Free Appropriate Public Education (FAPE) and was legally owed compensatory services in Reading and Writing (**Exhibit G**).

- **October 10, 2025:** Petitioners executed formal, signed consent for the immediate implementation of these compensatory special education services (**Exhibit H**).

- **October 13, 2025:** Within the allowed 15-day policy window, the parents filed a formal administrative residency appeal with Director of Support Services Shenequa Coles, anchoring William's enrollment in South Carolina property law (**Exhibit I**).

- **November 4, 2025:** Instead of providing the mandated compensatory services, the District abruptly and forcefully disenrolled J.W.J. from Rosewood Elementary School while his administrative residency appeal was actively pending (**Exhibit J**).

- **November 18, 2025:** Petitioners formally filed a Due Process Complaint addressing the denial of FAPE and the illegal withdrawal (**Exhibit M**). The District acknowledged formal receipt of the complaint on November 19, 2025. Shortly

thereafter, District In-House Counsel Dr. Tiffany Richardson became immediately involved in the case in an un-vouched, undefined capacity.

- **Late November 2025 – Early January 2026:** In direct proximity to critical litigation deadlines—including the District's December 4 response and the run-up to the LHO's January hearings—the District engineered a series of urgent, bad-faith South Carolina Department of Social Services (DSS) contact events and abuse/neglect reports targeting the family (**Exhibit N**).

- **January 12, 2026:** The LHO issued an interim summary judgment order dismissing the residency and withdrawal claims *without prejudice.*

- **February 2, 2026:** The LHO issued a final order dismissing the remaining due process complaints *without prejudice* (**Exhibit Q**).

- **February 2026:** Following a comprehensive state review, DSS issued a final administrative disposition declaring the District's allegations completely *unfounded*, establishing that the contact events were fabricated (**Exhibit O**).

- **March 11, 2026:** The State Review Officer (SRO) issued an appellate decision that egregiously mischaracterized the record, falsely claiming the LHO dismissed the claims *with prejudice*, and permanently barred the family's civil rights claims (**Exhibit R**).

## IV. STATEMENT OF LAW & LEGAL ARGUMENTS

*(Sections A, B, and C remain unchanged from the previous verified version.)*

### D. THE PUNITIVE "DISABILITY TAX" AND SIBLING EVICTIONS CONSTITUTE ACTIONABLE RETALIATION SATISFYING THE PEREZ EXHAUSTION EXCEPTION

The District responded to the family's protected special education advocacy with a pervasive, hostile campaign of discrimination under Section 504 of the Rehabilitation Act and Title II of the ADA:

- **The Unlawful "Disability Tax":** The District calculated and levied an extortionate $46,096.12 tuition bill against the family (**Exhibit K**). Proving a discriminatory and retaliatory motive, J.W.J.'s neurotypical siblings, Alana Marie (4th grade) and Joseph Anthony (5th grade), were assessed standard tuition rates of $10,086.68 each. Meanwhile, James William (2nd grade) was assessed a punitive rate of $25,922.76—exactly 2.5 times the cost of his neurotypical siblings, explicitly taxing his status as a student with an active IEP (**Exhibit K**).

- **Punitive Sibling Disenrollment:** The District punitively expelled J.W.J.'s neurotypical siblings, who were entirely outside the scope of special education,

solely to disrupt the family's domestic stability and punish parental advocacy (**Exhibit J**).

- **Manufactured Truancy and Privacy Violations:** The District threatened criminal truancy reports for absences directly caused by its own lockout, and threatened to release J.W.J.'s Personally Identifiable Information (PII) to outside law enforcement without parental consent, violating 34 C.F.R. § 300.622 (**Exhibit F**).

## E. THE WEAPONIZATION OF CHILD WELFARE APPARATUS: THE TIFFANY RICHARDSON PATTERN OF ADVERSARIAL DUORESS

Separate and distinct from standard educational disputes, the District engaged in an egregious abuse of state power by weaponizing the South Carolina Department of Social Services (DSS) against the family. Following the filing of the formal Due Process Complaint (**Exhibit M**), the District's In-House Counsel, Dr. Tiffany Richardson, immediately inserted herself into the case in a highly irregular, undefined capacity.

Immediately following her involvement, a sequence of aggressive DSS contact events was initiated against the parents (**Exhibit N**). The timing of these child welfare interventions was explicitly coordinated to conflict with major legal milestones in the IDEA action, deliberately forcing the parents to defend their custody of their children while simultaneously meeting strict federal litigation deadlines.

This specific operational methodology mirrors the highly publicized conduct that led to Dr. Richardson's abrupt termination as General Counsel for the Berkeley County School District. In that matter, the governing Board explicitly documented that Dr. Richardson had severely compromised inter-agency integrity by fostering a hyper-adversarial relationship with, and manipulation of, child protection agencies (DSS) and state law enforcement (SLED) to combat internal disputes and insulate the district from transparency (**Exhibit P**).

The District attempted to deploy that exact, terminated Berkeley County playbook here to crush parental advocacy. However, the plot collapsed under state scrutiny: a formal, comprehensive evaluation by DSS culminated in a final disposition finding the allegations completely *unfounded* (**Exhibit O**). Because an IDEA hearing officer possesses zero statutory authority to oversee child welfare agencies, review civil rights intimidation, or remedy bad-faith DSS administrative reporting, administrative exhaustion under *Perez v. Sturgis* is entirely bypassed. These institutional contact events stand as irrefutable, independent evidence of bad-faith retaliation and deliberate indifference under Title II of the ADA.

## F. THE TOTAL DEPRIVATION OF AN ACADEMIC YEAR DEMANDS QUANTIFIABLE PECUNIARY AND EQUITABLE RELIEF UNHAMPERED BY CUMMINGS

The District's unlawful disenrollment completely isolated all three minor children from public education for the entirety of the 2025–2026 academic year. To mitigate this catastrophic academic drift and ensure the children remained competitive with their peers, Plaintiffs were forced to cover out-of-pocket expenses for private tutors throughout the summer (**Exhibit T**).

While *Cummings v. Premier Rehab Keller* limits emotional distress damages under Section 504, it leaves out-of-pocket economic losses and damages for **lost educational opportunities** entirely intact. Under Title II of the ADA and Section 504, a plaintiff may establish lost opportunity damages through testimony and financial ledgers demonstrating they were blocked from accessing the educational benefits a public entity is mandated to provide.

The quantification of this stolen academic year is measured by the out-of-pocket costs incurred to mitigate the damage (**Exhibit T**), combined with the objective market replacement cost of the lost educational program (**Exhibit T**). Furthermore, with respect to J.W.J., the Fourth Circuit recognizes that compensatory education is an equitable remedy meant to restore the student to the position they would have occupied but for the FAPE denial. A qualitative calculation recognizes that missing an entire foundational year requires prospective, comprehensive restorative instruction that exceeds a restrictive hour-for-hour metric.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Richland County School District One, ordering the following relief:

1. **Strict De Novo Review:** Apply a strict *de novo* standard of review to the entire administrative record, affording zero deference to the SRO's fatally flawed appellate decision (**Exhibit R**).

2. **Full Reversal:** Reverse the decisions of the State Review Officer (**Exhibit R**) and Local Hearing Officer (**Exhibit Q**) in their entirety.

3. **Immediate Stay-Put Reinstatement:** Declare that the District violated the IDEA's mandatory stay-put provision and issue an immediate emergency injunction ordering J.W.J.'s reinstatement to Rosewood Elementary School.

4. **Enforcement of Qualitative Compensatory Education:** Order the creation of an independent, District-funded educational trust or prospective remedy for J.W.J. calculated qualitatively under *Reid* to provide comprehensive, individualized specialized instruction, reading/writing clinics, and related therapies necessary to restore the full educational baseline stolen during the 2025–2026 school year lockout.

5. **Pecuniary Damages for Lost Educational Opportunities:** Award full compensatory pecuniary damages under Title II of the ADA and Section 504 for

the distinct market-rate loss of an entire academic year of educational benefits, opportunities, and milestones intentionally stripped from Alana Marie and Joseph Anthony via retaliatory disenrollment (**Exhibit T**).

6. **Reimbursement of Out-of-Pocket Mitigation Costs:** Award full monetary damages compensating the family for all out-of-pocket financial expenditures incurred due to the District's lockout, including but not limited to the verified costs of private summer tutors, specialized educational juices, and diagnostic materials utilized to keep all three minor children competitive with their peers (**Exhibit T**).

7. **Damages for Retaliatory Financial Extortion:** Order the complete invalidation and vacuuming of the discriminatory $46,096.12 "tuition tax" ledger (**Exhibit K**), and award monetary damages for the financial duress intentionally leveraged against the household.

8. **Litigation Costs and Expenses:** Award Plaintiffs all reasonable filing fees, expert fees, transcript costs, and associated litigation expenses pursuant to 20 U.S.C. § 1415(i)(3)(B) and applicable law.

## APPENDIX: INDEX OF EXHIBITS

- **EXHIBIT A:** Spring 2024 Child Find Documentation and Academic Notice Records.

- **EXHIBIT B:** District Enrollment Portal Confirmation Receipt (Dated August 6-7, 2025).

- **EXHIBIT C:** Rosewood Elementary Surveillance Logs and Superior Street Field Notes (August 8, 2025).

- **EXHIBIT D:** Internal District Email Correspondence between Crystal Green and Database Specialist.

- **EXHIBIT E:** Truancy & Attendance Notification Issued by Assistant Principal Julie Stensland (September 16, 2025).

- **EXHIBIT F:** Written District Communication Threatening Disclosure of PII and Criminal Truancy Prosecution.

- **EXHIBIT G:** Richland County School District One Prior Written Notice (PWN) and IEP Confessing FAPE Denial & Awarding Reading/Writing Compensatory Education (Dated October 7, 2025).

- **EXHIBIT H:** Executed Parental Consent Form for Immediate Implementation of Compensatory Services (Dated October 10, 2025).

- **EXHIBIT I:** Formal Administrative Residency Appeal Filed with Director Shenequa Coles (Dated October 13, 2025).

- **EXHIBIT J:** Official Notices of Disenrollment and Physical Lockout Receipts for J.W.J., Alana Marie, and Joseph Anthony (Dated November 4, 2025).

- **EXHIBIT K:** District Invoice Ledger Assessing Total Out-of-District Tuition Penalty of $46,096.12. Comparative Tuition Breakdown Ledger Documenting J.W.J.'s Punitive $25,922.76 "Disability Tax" vs. Sibling Baseline Rates.

- **EXHIBIT M:** Plaintiffs' Formal IDEA Due Process Complaint (Dated November 18, 2025) with District Written Confirmation of Service (Dated November 19, 2025).

- **EXHIBIT N:** South Carolina Department of Social Services (DSS) Investigative Timeline & Contact Logs Documenting Strategic Coordination with Federal Litigation Deadlines.

- **EXHIBIT O:** Official DSS Administrative Disposition Report (Dated February 2026) Finding All District Abuse/Neglect Allegations Completely **Unfounded**.

- **EXHIBIT P:** Berkeley County School District Official Board Resolution & Termination Statement Regarding Dr. Tiffany Richardson.

- **EXHIBIT Q:** LHO Final Order Dismissing Due Process Claims **Without Prejudice** (Dated February 2, 2026).

- **EXHIBIT R:** SRO Appellate Decision Purporting to Affirm a Dismissal **With Prejudice** (Dated March 11, 2026).

- **EXHIBIT T:** Itemized Out-of-Pocket Mitigation Ledger Documenting Accumulated Invoices, Receipts, and Payments for Private Summer Tutors and Compensatory Academic Curricula.

- **EXHIBIT T:** Market Valuation and Opportunity Replacement Cost Report Mapping the Economic Educational Baseline of the Stolen 2025–2026 Academic Year in the Columbia, SC Area.

## VERIFICATION

We, Aaron Tyler and Amelia Tyler, verify under penalty of perjury under the laws of the United States of America that the foregoing statements and factual assertions contained in this Principal Brief are true, accurate, and correct to the best of our knowledge and belief.

Respectfully submitted,

Dated: June 2, 2026

By: /s/ Aaron Tyler

**Aaron Tyler**, *Pro Se Plaintiff*          6/9/2026

By: /s/ Amelia Tyler

**Amelia Tyler**, *Pro Se Plaintiff*